```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
PAVERS & ROAD BUILDERS DISTRICT                             :
COUNCIL WELFARE FUND; PAVERS &                              :
ROAD BUILDERS DISTRICT COUNCIL                              :
PENSION FUND; PAVERS & ROAD                                 :
BUILDERS DISTRICT COUNCIL ANNUITY                           :
FUND; PAVERS & ROAD BUILDERS                                :    **MEMORANDUM**
DISTRICT COUNCIL APPRENTICESHIP,                            :    **DECISION AND ORDER**
SKILL IMPROVEMENT & SAFETY FUND;                            :
THE LOCAL 1010 APPRENTICESHIP SKILL                         :    15 Civ. 0207 (BMC)
IMPROVEMENT AND TRAINING FUND;                              :
JOSEPH MONTELLE as Funds' Administrator;                    :
KEITH LOSCALZO as a Fund Administrator;                     :
and HIGHWAY, ROAD AND STREET                                :
CONSTRUCTION LABORERS LOCAL                                 :
UNION 1010, LABORERS INTERNATIONAL                          :
UNION OF NORTH AMERICA,                                     :
                                                            :
                              Plaintiffs,                   :
                                                            :
         - against -                                        :
                                                            :
CORE CONTRACTING OF NY, LLC, ET AL.,                        :
CANAL ASPHALT, INC.; COLUMBUS                               :
CONSTRUCTION CORP.; and NIKAN                               :
CONSTRUCTION, INC.,                                         :
                                                            :
                              Defendants.                   :
                                                            :
----------------------------------------------------------- X
```

**COGAN,** District Judge.

This is an action by administrators of an ERISA pension fund and the Union that created the fund seeking unpaid pension contributions. All four corporate defendants are alleged to be signatories of or, in one case, a former signatory of a collective bargaining agreement that gave rise to pension contribution obligations; all four defendants are also alleged to be *alter egos* of each other.

Defendants have collectively advised the Court by letter that defendant Canal Asphalt, Inc. has filed for Chapter 11 relief in the Southern District of New York, and they assert that as a result of that, this action is stayed against all defendants pursuant to the Bankruptcy Code's automatic stay, 11 U.S.C. § 362(a)(1). In response, I entered an Order noting that the automatic stay, by its terms, protects only debtors under the Bankruptcy Code, see id. (a bankruptcy petition "operates as a stay . . . of . . . the commencement or continuation . . . [of an] action or proceeding *against the debtor* . . .") (emphasis added), and since this action involves non-debtor defendants in addition to the debtor defendant, the action would continue against those non-debtor defendants. Defendants then submitted an additional letter, asserting that because the complaint contains an *alter ego* claim, the automatic stay applies to all defendants, both debtor and non-debtor. For this proposition, they cite In re Adler, 494 B.R. 43 (Bankr. E.D.N.Y. 2013) ("Adler II"), asserting that it is "directly on point."

Adler II is not directly on point; its context is quite different, although it does contain dictum that supports defendants' position. But in any event, I disagree with that dictum for the reasons set forth below.

Adler was an individual Chapter 7 case. Prior to the filing of the bankruptcy, creditors brought a state court action against Adler and five corporations which he controlled. The claim was against those corporations; Adler was alleged to be liable on the basis of his being their *alter ego*, and the corporations were alleged to be *alter egos* of each other. When Adler filed his Chapter 7 petition, the action was not stayed against the non-debtors. Rather, "the State Court severed and stayed the State Court Lawsuit against the Debtor individually, including the cause of action seeking to pierce the corporate veil. The lawsuit continued as against the Corporations only." In re Adler, 467 B.R. 279, 283 (Bankr. E.D.N.Y. 2012) ("Adler I"). Apparently, neither

2

the debtor nor the Chapter 7 Trustee took any action to prevent prosecution against Adler's corporations. The corporations defaulted, and the creditors obtained judgment against them in state court. In the inquest on damages, the state court also found that the corporations were *alter egos* of each other.

The judgment creditors then sought to pursue their claims in Bankruptcy Court against Adler and the non-debtors, and objected to the dischargeabilty of Adler's debt on the ground of fraud. Adler I constituted the Bankruptcy Court's determination to pierce the corporations' veil and hold Adler liable for their debt. Adler II, upon which defendants rely here, held that the debt was non-dischargeable.

Defendants point out that in the course of Adler II, the Bankruptcy Court noted that because it had held in Adler I that Adler was an *alter ego* of the corporations, the state courts' entry of judgment against the corporations was a nullity. The Bankruptcy Court commented:

> The first consequence of the Piercing Ruling arises under § 362(a)(1). As the Debtor and the alter ego Corporations were at all relevant times one and the same entity, the automatic stay in § 362(a)(1) foreclosed any judicial action against the Debtor and the Corporations alike upon the Debtor's filing of his individual bankruptcy petition on July 28, 2004. Consequently, to the extent any prepetition judicial action against the Corporations continued into the post-petition period, that proceeding violated § 362(a)(1) and was void as a matter of law. Here, since the decision of the New York Supreme Court . . . finding the Corporations liable to the Plaintiffs for $2,025,849.97 was issued post-petition, it is such a nullity. Its findings regarding the Corporations' liability therefore lack any legal effect.

Adler II, 494 B.R. at 53. The Bankruptcy Court went on to conclude, nevertheless, that the corporations and Adler were liable as *alter egos* in the same amount as had been found by the state court.

The difficulty I have with the Bankruptcy Court's dictum is twofold. First, it ignores the plain language of the statue, which provides that the automatic stay protects only the debtor, not

3

non-debtor entities. Just because two entities are *alter egos* does not make them both debtors under the Bankruptcy Code. It simply means they are liable for each other's debts. If the non-debtor entity wants that protection, it need only file its own petition.

Second, the Bankruptcy Court's dictum makes the automatic stay into a provision that can only be applied with the benefit of hindsight. It allows extensive litigation in the non-bankruptcy court, and then invalidates everything that occurred even though the debtor made no effort to stop it. If the state court or the Bankruptcy Court had determined, for example, that the corporations were not *alter egos*, then the automatic stay would never have applied. Moreover, it is well established that non-bankruptcy courts have concurrent jurisdiction with the bankruptcy court to determine the scope of the automatic stay. See In re Baldwin–United Corp. Litig., 765 F.2d 343 (2d Cir. 1985); see also In re Colasuonno, 697 F.3d 164, 172 n.4 (2d Cir. 2012). It follows from this that the state court in the instant case was free to determine, as it did, that the automatic stay did not protect the non-debtor corporations, and to thereupon proceed to judgment in its case. The state court in Adler was careful, as it should have been, in abstaining from deciding whether Adler was an *alter ego* of his corporations, leaving that issue for the Bankruptcy Court. But nothing in the Bankruptcy Code required the state court to extend the protection of the automatic stay to entities that might or might not be the debtor's alter egos.

This is not to suggest that the Bankruptcy Court, either itself or on motion of the debtor or other party in interest, is unable to extend the protection of the automatic stay to non-debtor entities. As the Adler II court pointed out, "because it refers purely to actions against 'the debtor,' § 362(a)(1) stays are generally 'limited to debtors and do not encompass non-bankrupt co-defendants.' Notwithstanding this rule, if certain unusual circumstances arise during the pendency of a debtor's bankruptcy case, a bankruptcy court may enjoin actions against third-

4

parties." Adler II, 494 B.R. at 57 (citation and quotation marks omitted). There are two ways that this typically occurs. First, it is common practice in bankruptcy court for the debtor or other party in interest to commence an adversary proceeding for an anti-suit injunction (see Bankruptcy Rule 7001(7)) against litigation outside bankruptcy court against non-debtor entities. See, e.g., In re Chateaugay Corp., Reomar, Inc., 93 B.R. 26 (S.D.N.Y. 1988). Second, in confirming a plan of reorganization under Chapters 11 or 13, a Bankruptcy Court may authorize a provision that prevents litigation against specified non-debtor parties. See In re United Health Care Org., 210 B.R. 228 (S.D.N.Y. 1997).

The rationale for either of these procedures is the same – the Bankruptcy Court makes specific findings that the antisuit injunction, whether obtained by adversary proceeding or in a plan of reorganization, is necessary to protect the debtor's estate or to effectuate its reorganization. It is the protection of the debtor, not the non-debtors (who receive the benefit only collaterally) that furnishes the rationale for extending the automatic stay to include those non-debtors.

Whether the Bankruptcy Court can make these findings will vary on a case-by-case basis depending on the volume and type of creditors of both the debtor and the non-debtor. It could easily be the case, for example, that creditors of a Chapter 11 debtor are better off if separate creditors of an affiliated non-debtor are allowed to pursue their non-debtor defendant and have their claims satisfied from the non-debtor defendants; that will reduce the debt load on the Chapter 11 debtor, and allow a greater recovery for its separate creditors. In that situation, the Bankruptcy Court would likely see no reason to extend the automatic stay, whether pre-confirmation or as part of a Chapter 11 plan of reorganization. On the other hand, to give another example, if assets which should be available to satisfy claims of the debtor's creditors

5

have been moved to non-debtor entities, then it may be necessary to extend the automatic stay under 11 U.S.C. § 105 to protect the non-debtor entities, for not only may they be *alter egos*, but they may be holding the assets that should be used to satisfy all of the debtor's creditors, not just the plaintiffs in the non-bankruptcy action.  As a final example, which for all I know may be applicable here, if there is one super-dominant creditor that effectively holds all or almost all of the estate's debt, the Bankruptcy Court might well not only decline to extend the stay to protect non-debtors, but it might dismiss or convert the Chapter 11 case to Chapter 7 as a bad faith filing because it is a two-party dispute.  See In re HBA East, Inc., 87 B.R. 248 (Bankr. E.D.N.Y. 1988).

The necessity of determining whether to extend the stay on a case by case basis is crucial.  That is because the non-bankruptcy court neither has an interest in protecting, nor the practical ability to protect, the creditors of the debtor's estate.  In the case before me, for example, I do not know which, if any, of the foregoing examples apply.  Plaintiffs in the case before me may be the only creditors of both the debtor and non-debtor defendants with no or limited business operations, in which case I doubt the Bankruptcy Court would extend the automatic stay to cover the non-debtors. Or it may be that plaintiffs here are trying to get a leg up on other creditors of the debtor by pursuing their *alter ego* claims against the non-debtors.  I have neither the facts nor any procedure for obtaining the facts that would allow me to determine what is in the best interest of the debtor's estate, i.e., the interests of all of its creditors collectively.

Nor, frankly, do I have any interest in making that determination.  That is just not my problem.  I have before me a pension fund claiming delinquent contributions and shifting of assets to avoid having to pay workers what they are owed.  My only interest is in resolving that claim.  If in doing so, it would prejudice other creditors of the debtor in a way that the Bankruptcy Court would consider unfair, it is for the Bankruptcy Court, upon motion of the

6

debtor, to tell me so.  (Obviously, it goes without saying that I would give effect to a §105 injunction if the Bankruptcy Court issues it.)

As is often the case within the rapid-fire world of bankruptcy, there are decisions, like Adler II, which conclude, without considering the situations set forth above, that the automatic stay protects non-debtors in various circumstances.  Adler II cited one Second Circuit case, Queenie, Ltd. v. Nygard Int'l, 321 F.3d 282 (2d Cir. 2003), where the Court assumed the Bankruptcy Court's role in protecting the creditors of the estate by extending the stay to a debtor's wholly owned corporation.  The debtor had filed his Chapter 11 petition after judgment was entered in the District Court, so the issue had never been addressed before the appeal.  The Second Circuit concluded that "the stay applies to Queenie because it is wholly owned by Gardner, and adjudication of a claim against the corporation will have an immediate adverse economic impact on Gardner."  Id. at 288.  Whatever may be said for this decision, it has no application here, for I have no way to conclude, even if it was within my purview to do so, that pursuit of the claims against the non-debtors would have either an immediate or an adverse effect on the debtor.  That is for the Bankruptcy Court to determine.

Indeed, there are far more decisions that protect non-debtors only pursuant to an application for an injunction under 11 U.S.C. § 105.  See In re United Health Care Org., 210 B.R. at 232-33.  Moreover, when a bankruptcy court determines that the automatic stay applies to non-debtor entities, even without issuing an injunction, it is effectively weighing the intra and inter-creditor interests that its unique position allows it to take into account.  Such bankruptcy court decisions, like Adler II, are thus not very persuasive in instructing what a non-bankruptcy court should do, and I decline to act like a bankruptcy court here.

There are two other considerations that bear mention. First, although defendants focus on the complaint's *alter ego* allegations, the complaint is not limited to or even dependent upon those allegations. Rather, the bulk of the complaint alleges that the non-debtor defendants have independent contractual liability under the various association and individual collective bargaining agreements. I see no argument why the automatic stay should apply to the primary liability of non-debtors. At most, the automatic stay could apply to the *alter ego* claims, but defendants have offered no reason why it should go beyond that.

Finally, defendants have additional procedures they can utilize if they believe these claims should be determined by the Bankruptcy Court. Not only may the debtor seek an injunction from the Bankruptcy Court under §105(a), but they may seek to transfer this case to the Southern District of New York for reference to the Bankruptcy Court. See 28 U.S.C. § § 1404(a), 1452.

In short, the automatic stay is automatic as applied to a debtor because that is what the statute says. As to non-debtors, it is relief that is available, but it is not automatic. This action shall therefore continue against the non-debtors under the schedule previously set unless the Bankruptcy Court orders otherwise.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
August 18, 2015